1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAMIR HUDIEB,

Plaintiff,

v.

CITY OF HAYWARD, et al.,

Defendants.

Case No.  19-cv-02842-SK

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Regarding Docket Nos. 39, 43, 49

Plaintiff filed his initial complaint on May 23, 2019.  (Dkt. 1.)  Defendants moved to dismiss, and Plaintiff opposed the motion.  (Dkts. 22, 24, 25.)  On September 3, 2019, this Court issued an order granting in part and denying in part the motion to dismiss and granting Plaintiff leave to amend the complaint.  (Dkt. 38.)  On September 9, 2019, Plaintiff filed his first amended complaint ("FAC").  (Dkt. 39.)  Defendants moved to dismiss the FAC, and Plaintiff opposed the motion.  (Dkts. 43, 49.)  On October 7, 2019, the Court held an initial case management conference; during the conference, Plaintiff's counsel informed the Court that Defendant Officer Spillner had yet to be served.  (Dkt. 46.)  The Court gave permission for Plaintiff's counsel to issue a single interrogatory to obtain Spillner's last known address and to attempt to serve Spillner.  The Court ordered Plaintiff's counsel to inform the Court no later than November 27, 2019, whether he had successfully served Spillner.

Plaintiff's counsel did not file any document on the Court's docket indicating whether he had successfully served Defendant Spillner.  At a case management conference held December 2, 2019, the Court again continued the motion hearing for one month to allow for service of Defendant Spillner.  (Dkt. 53.)  The Court continued the matter again on January 10, 2020.  Finally, on January 27, 2020, Defendant Spillner appeared in person and consented to the jurisdiction of the undersigned.  (Dkt. 59.)  The Court heard oral argument on Defendants' motion to dismiss the FAC.  (*Id.*)

United States District Court
Northern District of California

1

2

3

Having carefully considered the submissions of the parties, the relevant legal authority, and the record in the case, the Court HEREBY GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss the FAC.

4

## BACKGROUND

5

6

7

8

9

10

11

12

13

Plaintiff was placed on five years of probation on April 25, 2013, and the terms of his probation included a "four-way" search clause.[1]  (Dkt. 1.)  Plaintiff's probation terminated April 25, 2018.  (*Id.*)  On April 30, 2018, Defendants City of Hayward Police Officers Spillner, Thompson, Martinez, Reynuga, Wheeler, and Sargent Maloney ("Officers") entered Plaintiff's home without a search warrant.  (*Id.*)  The Officers placed Plaintiff in handcuffs for 30 minutes and performed a search of his residence.  (*Id.*)  The Officers arrested Plaintiff for violating the terms of his probation and possessing contraband.  (*Id.*)  After the mistake about the timing of probation was discovered, all charges against Plaintiff were dismissed as the result of an unlawful search and arrest.  (*Id.*)

14

15

16

17

On October 9, 2018, Plaintiff filed a government claim under Cal. Gov. Code § 910, and the City of Hayward ("City") rejected his claims.  (*Id.*; Dkt. 22-2).[2]  The form that Plaintiff submitted for his claim with the City does not list trauma from forceful handcuffing (Dkt. 22-2), but Plaintiff's initial complaint claimed damages from his handcuffing.  (Dkt. 1).

## A.      Initial Complaint and Motion to Dismiss.

18

19

20

21

22

23

Plaintiff's initial complaint was silent as to the motivation of the Officers and the City and did not state that they relied upon the internal database showing probation information ("CRIMS") in making their decision to search, but Plaintiff alleged in his opposition that the Officers and the City were aware of widespread problems in the CRIMS system but nonetheless engaged in a custom or practice of failing to verify information.  (Dkt. 25 at pages 5-6.)  Plaintiff made this

24

25

26

---

[1] Although the complaint does not define the term, a "four-way" search clause is commonly understood to allow a warrantless search of the person, home, and any vehicle or property under the control of a person on probation.  *See*, *e.g.*, *Rodriguez v. Alameda*, 2016 WL 4538523 at *1 (N.D. Cal. Aug. 31, 2016).

27

28

[2] The Court takes judicial notice of the government claim form submitted to the City of Hayward on behalf of Plaintiff on October 9, 2018 (Docket 22-2), but does not take judicial notice of the facts contained in the form.

1    argument in response to the argument that the Officers had reasonably relied upon the CRIMS

2    system.  (Dkt. 22.)  At oral argument on the first motion to dismiss, Plaintiff's counsel confirmed

3    that Plaintiff is alleging liability under *Monell v. Dept. of Soc. Servs*, 436 U.S. 658, 690-91, 694

4    (1978), based on the fact that the CRIMS database was not working correctly, and Plaintiff asserts

5    that the mistakes in the CRIMS database has affected hundreds of people in Alameda County.  In

6    other words, though not explicitly established in the initial complaint, Plaintiff conceded that the

7    Officers relied upon the CRIMS system but contended that the CRIMS system was faulty.

8          Plaintiff initially brought nine claims: claims under 42 U.S.C. § 1983 for excessive force,

9    unlawful entry, and false arrest; claims under the California constitution for unreasonable search

10   and seizure and invasion of privacy; common law claims for negligence, battery, and false

11   imprisonment; and a California statutory claim for violation of the Bane Act, Cal. Gov. Code §

12   815.2.  Plaintiff brought each cause of action against both the City and the Officers individually.

13   Defendants moved to dismiss all claims in the initial complaint.

**B.     Order on Initial Motion to Dismiss.**

15         In its order deciding Defendants' initial motion to dismiss, the Court considered each claim

16   as to both the City and the individual Officers.  In his first, second, and third claims, Plaintiff

17   alleged that the Officers are liable under 42 U.S.C. § 1983 for violating his Fourth Amendment

18   rights to be free from excessive force (Count One), unlawful entry and search (Count Two), and

19   false arrest (Count Three).  (Dkt. 1.)  He simultaneously alleged that the City is liable for the same

20   Fourth Amendment violations under a *Monell* theory.  (*Id.*)  The Court concluded that the Officers

21   were entitled to qualified immunity on Counts Two and Three based on reasonable mistake of fact,

22   but not on Count One.  (Dkt. 38.)  The Court dismissed Counts Two and Three against the officers

23   *with prejudice*.  (*Id.*)  The Court denied the motion to dismiss Count One based on allegations that

24   Defendants handcuffed Plaintiff in overly tight handcuffs and refused to remove them.  (*Id.*)  As to

25   the City, the Court found that Plaintiff's initial allegations in Counts One, Two, and Three were

26   too conclusory and factually unsupported to state a claim for relief.  The Court permitted Plaintiff

27   to amend Counts One, Two, and Three, as to the City.

28         The Court then dismissed with prejudice Plaintiff's common law claims for negligence

United States District Court
Northern District of California

3

United States District Court
Northern District of California

(Count Five) and battery (Count Six) as to the Officers, finding them immune from common law liability for discretionary actions taken within the scope of their duties under California Government Code § 820.  The Court also found that Plaintiff's common law claim for false imprisonment (Count Eight) against the Officers survived under California Government Code § 820.4.  As to the City, the Court held that the City is liable for harm caused by the acts of its employees, except insofar as Plaintiff did not provide notice of his claims on the claim form required under California Government Code §§ 945.4 and 910.  The Court dismissed Counts Five and Six with prejudice as to the City because Plaintiff did not provide notice of those claims or factual allegations to support them.  The Court found that Plaintiff did give notice and supporting facts regarding Count Eight and denied the motion to dismiss that claim as to the City.

The Court similarly dismissed Plaintiff's Bane Act claim (Count Nine) with prejudice as to both the Officers and the City because Plaintiff did not give notice of the claim or provide supporting facts in his claim form submitted pursuant to California Government Code §§ 945.4 and 910.  Finally, the Court denied Defendants' motion to dismiss Plaintiff's California constitutional claims for unreasonable search and seizure and invasion of privacy.  The Court noted that it remains unclear whether a plaintiff may assert a direct claim for either violation under the California constitution, *see, e.g.*, *Julian v. Mission Community Hospital*, 11 Cal. App. 5th 360, 392 (2017), but declined to reach a holding on the merits of the issue because the parties did not provide fulsome briefing.

In summary, Count One (section 1983 excessive force) survived as pled against the Officers.  Counts Two (section 1983 unlawful entry and search) and Three (section 1983 false arrest) were dismissed with prejudice as to the Officers.  Counts One, Two, and Three were dismissed with leave to amend as to the City.  Counts Five (common law negligence) and Six (common law battery) were dismissed with prejudice as to both the Officers and the City.  Count Eight (common law false imprisonment) survived the motion to dismiss as pled against both the Officers and the City.  Counts Four (California constitution Article 1, Section 13) and Seven (California constitution Article 1, Section 1) survived the motion to dismiss because neither party substantively addressed them.  Count Nine (California Bane Act) was dismissed with prejudice as

4

to both the Officers and the City.  Thus, the FAC was permitted to contain only the following: a claim under 42 U.S.C. § 1983 claim for excessive force against the Officers, amended claims under 42 U.S.C. § 1983 for excessive force, unlawful entry and search, and false imprisonment against the City, a claim for common law false imprisonment against the Officers and the City, and claims for violation of the California Constitution, Article 1, Sections 1 and 13 against the Officers and the City.

**C.      First Amended Complaint.**

On September 9, 2019, Plaintiff filed the FAC.  (Dkt. 39.)  The FAC contains several amendments, as permitted by the Court.  The Court discusses each claim and Defendants' renewed challenges to those claims seriatim below.

**1.      1983 Claims against the City.**

The Court permitted amendment of Plaintiff's claims under 42 U.S.C. § 1983 for excessive force, unlawful entry, and false arrest against the City.  (Dkt. 38.)  The Court had initially pointed out that Plaintiff's initial complaint presented allegations that were too conclusory and factually unsupported to state a claim for relief, despite the fact that more fulsome allegations were included in the Plaintiff's opposition brief.  (*Id.*)  The Court concludes that Plaintiffs' amended 1983 claims against the City are sufficient to survive Defendants' motion to dismiss.

A municipality is only liable for the acts of its employees through section 1983 where the plaintiff can show that a policy, custom, or practice led to the violation at issue.  *Monell v. Dept. of Soc. Servs*, 436 U.S. 658, 690-91, 694 (1978).  As to Count One for excessive force, Plaintiff's FAC alleges that the City has engaged in a pattern of encouraging officers to use excessively tight handcuffs for ten years; that the City failed to train and supervise its employees to avoid constitutional violations; and that the City failed to implement an appropriate corrective policy.  (Dkt. 39.)  Defendants argue that Plaintiff still has not adequately alleged a custom or practice because these facts are not specific enough.  (Dkt. 44.)  "In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice."  *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir.

United States District Court
Northern District of California

2002) (citation omitted).  Yet some specificity is nevertheless required.  *See, e.g.*, *Inman v. Anderson*, 294 F. Supp. 3d 907, 920 (N.D. Cal. 2018) (noting that while bare allegations may suffice, the complaint nevertheless must allege a plausible claim for relief in compliance with *Twombly* and *Iqbal*); *Martinez v. Monterey Cnty. Sheriff's Office*, 2019 WL 176791, at *4 (N.D. Cal. Jan. 11, 2019) (rejecting *Monell* theory of liability where no specific facts were alleged).  The Court concludes that Plaintiff has realleged Count One with sufficient specificity to survive dismissal.  Further factual support is uniquely located within Defendants' control, rather than Plaintiff's control, at this point in the litigation, and dismissal at this point would undercut *Galbraith*'s interpretation of *Monell*.

Similarly, Plaintiff has adequately repled his allegations as to Counts Two and Three.  The FAC alleges that the City knew of systemic problems with its internal database showing probation information ("CRIMS") and failed to either remedy the problems or warn field officers about them.  (Dkt. 39.)  The FAC alleges that the City thereby ratified and sanctioned the Officers' resulting conduct, including unlawful searches, the illegal seizure of evidence, and false arrests. (*Id.*)  Regarding Counts Two and Three of the FAC, Defendant makes the same objection as to specificity.  Nevertheless, the Court finds that the FAC provides sufficient detail regarding a potential problem with the CRIMS database and the City's custom and policy surrounding that system to survive Defendants' motion to dismiss.

Accordingly, the Court DENIES Defendants' motion to dismiss Counts One, Two, and Three of the FAC as to the City.

### 2.    1983 Claim against the Officers.

With regard to Plaintiff's excessive force claim against the Officers for their use of excessively tight handcuffs during his arrest, the Court concluded that Plaintiff had initially made a sufficient showing to survive the Defendants' motion to dismiss.  In the FAC, Plaintiff again alleges that the Officers placed Plaintiff in overly tight handcuffs and refused to loosen them upon his repeated requests, despite the facts that he did not pose a threat to the Defendant Officers or bystanders and that there were alternative methods to effectuate their search.  (Dkt. 39.) Defendants contend that the Officers are entitled to qualified immunity because Plaintiff does not

allege any actual injury from his handcuffing and that a reasonable officer might have believed the amount of force used was reasonable because no obvious injury was caused.  In support of this proposition, Defendants cite *Stevenson*, which explicitly holds that "the facts of the Ninth Circuit's cases sugges[t] that too-tight handcuffing usually involve[s] significant injury to the hand *and/or a refusal to loosen the handcuffs once the cuffed person complained of the tightness*."  *Stevenson v. Jones*, 254 F. Supp. 3d 1080, 1092 (N.D. Cal. 2017) (emphasis added).

Because it was clear that case law requires loosening of handcuffs after repeated complaints, the Court concludes that the Defendant Officers are not entitled to qualified immunity as to Plaintiff's 1983 claim for excessive force.  The standard articulated in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) governs the qualified immunity defense in suits against individual officers for violation of a constitutional right.  First, the court must weigh whether the facts alleged clearly show that an officer's conduct violated a constitutional right.  *Id.* at 201.  Second, the court must determine whether the right at issue was clearly established as a matter of law at the time of the alleged misconduct.  *Id.* at 202.

Here, Plaintiff has a Fourth Amendment right to be free from excessive force.  To allege an excessive force claim under Section 1983, a plaintiff must demonstrate that the "force purposely or knowingly used against him was objectively unreasonable."  *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).  This standard is not applied mechanically, and objective reasonableness turns on the facts and circumstances of each particular case.  *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  In determining whether a given use of force was reasonable, courts consider factors such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Id.*  "Although it is true that overly tight handcuffing can amount to excessive force […] the level at which the fit becomes unconstitutionally tight is not well-defined."  *Stevenson*, 254 F. Supp. 3d at 1091.  However, multiple cases have found excessive force where a plaintiff complains about the tightness of handcuffs and the officers refuse to loosen them.  *See Wall v. Cnty. of Orange*, 364 F.3d 1107,

United States District Court
Northern District of California

1110 (9th Cir. 2004) (no qualified immunity on excessive force claim where plaintiff requested that overly tight handcuffs be loosened); *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 952 (9th Cir. 2000) (question of fact raised as to excessive force where plaintiff requested that overly tight handcuffs be loosened); *Meredith v. Erath*, 342 F.3d 1057, 1060 (9th Cir. 2003) (same); *Alexander v. Cnty. of Los Angeles*, 64 F.3d 1315, 1322-23 (9th Cir. 1995) (use of force unreasonable where Plaintiff repeatedly asked that tight handcuffs be loosened); *Palmer v. Sanderson*, 9 F.3d 1433, 1434-35 (9th Cir. 1993) (denial of qualified immunity proper on excessive force claim where officer refused request to loosen overly tight handcuffs).

Defendants' reliance on *Stevenson* is misplaced.  In *Stevenson*, the plaintiff suffered no injury and did not ask that the handcuffs be loosened.  254 F. Supp. 3d at 1091.  Though, as here, the plaintiff in *Stevenson* did not suffer an injury, the court expressly distinguished it from cases where there was a request and "a refusal to loosen the cuffs that was absent in Stevenson's case."  254 F. Supp. 3d at 1091.  Here, the Plaintiff repeatedly asked that the tight handcuffs be loosened, and the Officers refused to loosen them.  Ninth Circuit precedent clearly establishes that a refusal to loosen tight handcuffs upon a person's request can constitute excessive force.  Therefore, the Defendant Officers are not entitled to qualified immunity as to Count One and the Court DENIES Defendants motion to dismiss Count One of the FAC as to the Officers.

As to Counts Two and Three, section 1983 claims for unlawful entry and search and false arrest, respectively, the Court finds that the Officers are entitled to qualified immunity even after Plaintiff repled his allegations in the FAC.

Initially, the Court held that the Officers were entitled to qualified immunity as to these causes of action based on reasonable mistake of fact.  As discussed in the Court's prior order, Plaintiff's right under the Fourth Amendment to be free from the warrantless entry and concomitant search and arrest was amply established at the time the Officers acted.  *Espinosa v. City and Cnty. of San Francisco*, 598 F.3d 528, 533 (9th Cir. 2010) ("A warrantless entry into a home violates the Fourth Amendment unless an exception to the Fourth Amendment warrant requirement applies, such as emergency, exigency, or consent.").  However, the Court found that the Officers are immune from liability under their defense of qualified immunity because they

8

made a reasonable mistake of fact.  The Officers relied upon the CRIMS database, and based upon the information it provided, they made their warrantless entry and conducted their search of Plaintiff's home mistakenly believing that Plaintiff was still on probation and that their conduct was legal.

Under these circumstances, the defense of qualified immunity applies.  *See*, *e.g.*, *Chavez v. City of Petaluma*, 2015 WL 3766460, at *1 (N.D. Cal. Jun. 16, 2015) (officers entered the plaintiff's home without a warrant, searched the premises, and arrested plaintiff because officers relied on information that mistakenly showed plaintiff to be on state parole).  In considering the officers' defense of qualified immunity, the *Chavez* court found that the officers were reasonable in their mistaken factual belief that the plaintiff was on parole because the complaint detailed "no allegations suggesting that a reasonable official in either [officer's] position would have understood that his actions violated Plaintiff's constitutional rights."  *Id.*  The reliance in *Chavez* on information that law enforcement provided "was objectively reasonable because as a general matter," information from a law enforcement source regarding probation or parole is reliable.  *Id.*

As in *Chavez*, Plaintiff's initial complaint did not allege any reason that the Officers here should have known his probation had been terminated.  The complaint alleged neither that the individual Officers knew of a problem with the CRIMS system nor that Plaintiff informed them he was no longer subject to probation.  The Officers' reliance on their information about Plaintiff's status on probation from law enforcement was therefore objectively reasonable, despite the fact that the information was incorrect.  *Chavez*, 2015 WL at *14.  In ruling on the initial motion to dismiss, the Court dismissed Counts Two and Three without prejudice and instructed Plaintiff that any amended claims must allege facts to show that the Officers should have known that the CRIMS system was filled with errors and that there was some other method of verifying Plaintiff's probation status in order to proceed on these claims.

Despite the Court's instruction, the FAC does not adequately allege that the Officers knew of the errors in the CRIMS database or that there was some alternative method of checking Plaintiff's probation status.  For both Counts Two and Three, the FAC makes the conclusory factual statement that the individual Officers "knew that the CRIMS system was not reliable and that it had systematic issues with its accuracy."  (Dkt. 39.)  The FAC further alleges that "because

they knew that the CRIMS system was not reliable," a reasonable officer would have verified the Plaintiff's probation status by calling his probation officer directly prior to the search.  (*Id.*)  The FAC does not allege any further facts detailing why or how the Officers should have known there was a problem with the CRIMS system.  Accordingly, the Court GRANTS Defendants' motion and DISMISSES Counts Two and Three against the individual Officer Defendants WITH PREJUDICE.

### 3. California Constitutional Claims.

Plaintiff initially brought claims under the California Constitution based on unreasonable search and seizure, Cal. Const. Art. 1, § 13, and invasion of privacy, Cal. Const. Art. 1, §1.  (Dkt. 1.)  Defendants argued that the Court should dismiss these claims from the initial complaint, yet provided no analysis or legal authority to support their attack on these claims.  The Court declined to dismiss Plaintiff's California constitutional claims.  (Dkt. 38.)  Plaintiff then repled those claims, and Defendants again move to dismiss.  (Dkts. 39, 44.)  Again, Defendants provide no case law in support of dismissal but merely assert that there is no private right of action for California constitutional claims and noting that the requisite analysis under *Katzberg v. Regents of Univ. of California*, 29 Cal. 4th 300, 326 (2002), is "complex" and "should be fully briefed." (Dkt. 44.)  In turn, understandably, Plaintiff provides no substantive opposition to Defendants' conclusory motion to dismiss.  (Dkt. 49.)

Because Defendants, who bear the burden of proof on their motion to dismiss, have again failed to brief this issue adequately, the Court declines to expend judicial resources wading into the *Katzberg* analysis without assistance.  *See Shen v. Albany Unified School Dist.*, 2018 WL 4053482, at *4 (N.D. Cal. Aug. 24, 2018) (declining to take up *Katzberg* analysis where Defendants made "what is effectively a passing reference" to the issues in "underdeveloped" motion to dismiss); *Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1179 (E.D. Cal. Jun. 25, 2019) ("declin[ing] to delve into [*Katzberg*] analysis without appropriate briefing" on motion to dismiss).  Accordingly, the Court DENIES Defendants' motion to dismiss Counts Four and Five of the FAC.  Defendants may later move for judgment on the pleadings with fulsome briefing on the issue.

### 4.      False Imprisonment.

Plaintiff has alleged that he was confined without his consent for three weeks on the basis of the Officers' mistake about his probation status.[3]  The Court found that Plaintiff's initial common law claim for false imprisonment survived Defendants' first motion to dismiss as to both the Officers and the City.  (Dkt. 38.)  Defendants once again move to dismiss Plaintiff's false imprisonment claim, arguing that the Officers' reasonable mistake of fact excuses them from liability under California law.  (Dkt. 44.)[4]  Because Defendants argue that the Officers are not liable based on their reasonable mistake, Defendants concomitantly argue that the City is not liable under Government Code § 815.2(b) ("a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.")  *Id.*  Plaintiff counters that a reasonable officer would have known about the alleged errors in the CRIMS database, and therefore liability extends to both the Officers and the City, under Government Code § 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative").  (Dkt. 49.)

To state a claim for false imprisonment under California law, a plaintiff must show "(1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief."  *Bocanegra v. Jakubowski*, 241 Cal. App. 4th 848, 855 (2015).  "[A] police officer can be liable for false imprisonment based not only on an initial arrest, but also on prolongation of the imprisonment after the arrest."  *Id.* at 855-56.  "[T]he test for false imprisonment liability […] requires either that the [jailer] have actual knowledge that the

---

[3]  Again, the FAC is silent about the length of Plaintiff's incarceration, but the government claim he presented to the City alleges that he was incarcerated for three weeks.  (Dkt. 22-2.)

[4]  Defendants now appear to concede the point that the California Government Code does not shield either the Officers or the City from liability for false imprisonment, by specific exception to the general limitation on liability for discretionary acts.  *See* California Government Code § 820.4 (establishing that while "[a] public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law," "[n]othing in this section exonerates a public employee from liability for false arrest or false imprisonment.");  *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 850 (1997) ("Under California law, a police officer may be held liable for false arrest and false imprisonment") (citing section 820.4).

United States District Court
Northern District of California

United States District Court
Northern District of California

imprisonment of the plaintiff is unlawful or that he have some notice sufficient to put him, as a reasonable man, under a duty to investigate the validity of the incarceration." *Sullivan v. Cnty. of Los Angeles*, 12 Cal. 3d 710, 719 (1974).  As the *Sullivan* court noted, false imprisonment "is an intentional tort [...] committed when a man intentionally deprives another of his liberty without the other's consent and *without adequate legal justification*."  12 Cal. 3d at 718 (emphasis added). "Failure to know" that imprisonment is illegal "is not, as a matter of law, adequate legal justification for an unauthorized restraint." *Id.*  "Ignorance and alibis by a jailer should not vitiate the rights of a man entitled to his freedom." *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1968). Upon "some notice sufficient to put him, as a reasonable man, under duty to investigate the validity of [...] incarceration," the jailer becomes liable for false imprisonment if investigative actions are not taken, otherwise "nine months could easily be nine years, and those nine years, ninety-nine years, and still as a matter of law no redress would follow."  12 Cal. 3d at 718-19.

The Court finds, as discussed in its prior Order, that the arresting Officer Defendants made a reasonable mistake of fact as to Plaintiff's probation status at the time of the arrest.  Thus, though their actions were unlawful, they believed them to be lawful at the time they committed them.  However, the Court finds a meaningful distinction between the Officers' beliefs at the time of Plaintiff's arrest and Plaintiff's imprisonment for three entire weeks after his arrest.  Here, the Officers and the City did not determine that Plaintiff was unlawfully detained for a period of three weeks, and Plaintiff alleges that they knew of systemic problems with the CRIMS database.  Thus, Plaintiff has pleaded a common law claim for false imprisonment against the City and the Officers.  It is not clear on the record before the Court what ultimately prompted Plaintiff's release after three weeks.

In evaluating the allegations in the FAC, the Court is further mindful of the fact that Defendants were far better positioned to evaluate the legal correctness of Plaintiff's confinement than Plaintiff.  Defendants also have recourse to facts surrounding their decision-making surrounding Plaintiff's release that Plaintiff cannot access, absent discovery.  Given that Plaintiff has alleged defects in the CRIMS database that were known to or should have been known to the City and its employees, including the arresting Officers, the Court finds that Plaintiff has stated a

claim for false imprisonment based on those allegations not at the moment of the arrest itself, when the Officers made a reasonable mistake of fact, but during the subsequent three weeks during which Plaintiff was held without probable cause.

The Court finds that Plaintiff has stated a plausible claim for relief against the City for the harm resulting from his imprisonment subsequent to arrest.  Accordingly, the Court DENIES Defendants' motion to dismiss Count Six of the FAC as to both the Officers and the City.

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' motion to dismiss Counts One, Two, and Three of the FAC as to the City.  The Court DENIES Defendants' motion to dismiss Count One of the FAC as to the Officers and GRANTS Defendants' motion to dismiss Counts Two and Three as to the Officers WITH PREJUDICE.  The Court DENIES Defendants' motion to dismiss Counts Four and Five of the FAC as to both the Officers and the City.  And the Court DENIES Defendants' motion to dismiss Count Six of the FAC as to both the Officers and the City.

**IT IS SO ORDERED**.

Dated: February 13, 2020

_____
SALLIE KIM
United States Magistrate Judge

13